IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ARASH GHAYOORI, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 23-cv-2116 |
| TIMOTHY L. KILLEEN and THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, | ) |
| Defendants. | ) |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Defendants University President Timothy Killeen and the Board of Trustees of the University of Illinois's ("the Board") Motion to Dismiss. (Doc. 17).

### I.   PROCEDURAL BACKGROUND

On February 1, 2024, Arash Ghayoori filed his Second Amended Complaint against the Board and President Killeen after the University revoked his Doctoral degree following an investigation into allegations that he plagiarized his thesis. (Doc. 14). Ghayoori asserts in Count I that Defendants violated his Fifth and Fourteenth Amendment due process rights. (*Id.*). Ghayoori asserts a breach of contract claim in Count II and a claim pursuant to 42 U.S.C. § 1983 in Count III. (*Id.*). On April 1, 2024, Defendants filed their Motion to Dismiss. (Doc. 17). On April 29, 2024, Ghayoori filed his response. (Doc. 20).

## II. FACTUAL BACKGROUND

In Spring 2014, Ghayoori began his graduate studies at the University of Illinois. (Doc. 14 at 2). During his time in the Industrial Systems Engineering program, he maintained grades that met the program's standing requirements, was a teaching assistant, published peer-reviewed papers in that field, lectured for undergraduate students, and maintained full-time enrollment. (*Id.* at 2-3). Ghayoori took an academic leave of absence beginning in December 2018, but resumed his studies in the Fall Semester of 2019. (*Id.* at 3). In May 2019, Ghayoori began working for MTEK Sciences. (*Id.*).

In January 2020, Ghayoori passed his preliminary examinations. (*Id.*). He completed his dissertation and provided it to members of his Dissertation Committee for review. (*Id.*). After receiving feedback on that dissertation, he incorporated suggestions into his final Doctoral submission, including adding a section regarding HIV incidences in Rwanda. (*Id.*). In July 2020, the Doctoral Committee members voted that Ghayoori's dissertation represented original work and that he had fully satisfied all requirements for a doctoral degree from the University. (*Id.* at 4). The University conferred Ghayoori with his doctoral degree in December 2020. (*Id.*).

On May 6, 2021, the University received a complaint accusing Ghayoori of plagiarizing a portion of his dissertation. (*Id.*). Ghayoori believes the original plagiarism complaint was made by a disgruntled former coworker. (*Id.*). He also believes the former coworker convinced another colleague to report Ghayoori's dissertation for plagiarism. (*Id.*). The University began investigating these allegations and found "additional claims

of purported plagiarism." (*Id.*). Ghayoori was represented by counsel during the process. (*Id.* at 5). In August 2023, the University completed its research misconduct investigation, and revoked Ghayoori's doctoral degree. (*Id.*).

Ghayoori asserts several issues with the University's investigation. First, he argues the University failed to interview several witnesses who would have supported his claim that he did not engage in plagiarism, even though the University's "general integrity and other policies required that they be interviewed." (*Id.* at 5-6). Additionally, Ghayoori believes he was not able to plagiarize because his dissertation was published before the other work. (*Id.* at 6). Finally, Ghayoori asserts the University deleted his protected electronic data from his email account, which would have supported his claim that he did not have access to the other work. (*Id.*).

### III.   DISCUSSION

#### A.  Legal Standard

Defendants move to dismiss the Complaint under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under 12(b)(1) asserts that the Court does not have jurisdiction over some or all of the subject matter in the complaint. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff." *Center for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden

of establishing that the jurisdictional requirements have been met." *Burwell*, 770 F.3d at 588-89. When considering a Rule 12(b)(1) motion where the complaint is formally sufficient, but the defendant contends there is no subject-matter jurisdiction, a court can look beyond the complaint and consider evidence submitted by the parties, without converting the motion to one for summary judgment. *Taylor v. McCamet*, 875 F.3d 849, 853 (7th Cir. 2017), *citing Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true, and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plausible claim is one that alleges factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Fifth Amendment

Defendants argue that Ghayoori cannot bring an independent cause of action under the Fifth Amendment because the Fifth Amendment due process right is not

incorporated against the State. Ghayoori's waives argument on this issue based on his failure to respond to the Defendants' argument.

Furthermore, the Fifth Amendment Due Process Clause only applies to federal actors, not the state actors at issue here. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Jackson v. Byrne*, 738 F.2d 1443, 1446 (7th Cir. 1984) (dismissing a Fifth Amendment due process claim which did allege "action by the federal government, as the Fifth Amendment requires."). Accordingly, Defendant's Motion to Dismiss Ghayoori's Fifth Amendment claim is granted.

**C. Fourteenth Amendment and Section 1983**

Defendants argue the Fourteenth Amendment and Section 1983 claims cannot be brought as independent claims because Section 1983 is a means of enforcing substantive rights and Fourteenth Amendment claims cannot be brought as a direct cause of action.

Ghayoori addresses only one of the sources which Defendants rely upon—*Ledford v. Sullivan*, 105 F.3d 354 (7th Cir. 1997)—and asserts that it does not support Defendants' argument. The Court disagrees. In *Ledford*, the Seventh Circuit stated, "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights conferred elsewhere." *Ledford*, 105 F.3d at 356. The Seventh Circuit further stated that the starting point for a Section 1983 analysis is to identify which right was allegedly violated. *Id.* Thus, it does support Defendants' argument that Section 1983 cannot be brought as an

independent claim. In addition to the Seventh Circuit in *Ledford*, numerous courts have recognized that due process claims under the Fourteenth Amendment cannot be raised as a standalone claim, as Section 1983 is the proper vehicle by which to bring those claims. *See Raj v. La. State Univ.*, 714 F.3d 322, 328 n.2 (5th Cir. 2013), *citing Conn. v. Gabbert*, 526 U.S. 286, 290 (1999); *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 732 n.3 (7th Cir. 1994) (superseded by statute on other grounds); *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981); *Holley v. Lavine*, 605 F.2d 638, 647-48 (2d Cir. 1979); *Maduko v. Illinois*, 2008 U.S. Dist. LEXIS 85074 (N.D. Ill. Sep. 17, 2008). Based on this precedent, neither the Fourteenth Amendment nor Section 1983 provide an independent cause of action. However, as other courts have done, this Court will conduct the Section 1983 analysis as though the claim encompasses the Fourteenth Amendment due process claim. *See Raj*, 714 F.3d at 328 n.2.

Next, Defendants argue that Ghayoori cannot bring a Section 1983 claim against the Board, because the Board is not a "person" within the meaning of the statute. Section 1983 allows a plaintiff to sue a "person" who, acting under color of state law, has violated the plaintiff's constitutional rights. 42 U.S.C. § 1983. In *Malhotra v. University of Illinois at Urbana-Champaign*, 77 F.4th 532, 535 (7th Cir. 2023), the Seventh Circuit addressed this same issue and held the plaintiff could not sue the University of Illinois under Section 1983 because the University is an alter-ego of the state for sovereign immunity purposes, rather than a person. *Id.*

Moreover, Ghayoori's claim against the Board is barred under the Eleventh Amendment. Pursuant to the Eleventh Amendment, "[a] state and its agencies cannot be

subject to a federal suit without the state's consent." *See Haynes v. Ind. Univ.*, 902 F.3d 724, 731 (7th Cir. 2018). As the University and its Board of Trustees are state agencies for sovereign-immunity purposes, Ghayoori cannot maintain an action for damages against them. *Id.* However, Ghayoori's claim against President Killeen in his official capacity is not barred by the Eleventh Amendment as it falls within the exception contemplated by *Ex Parte Young*. *Malhotra*, 77 F.4th at 536. Therefore, Plaintiff's Section 1983 claim against the Board for the alleged Fourteenth Amendment due process violation is dismissed.

Finally, Defendants argue that the Section 1983 claim against President Killeen should be dismissed because Ghayoori received sufficient process. The Fourteenth Amendment prevents a state from depriving a person of "property" or "liberty" without due process of law. U.S. Const. amend. XIV, § 1. In order to proceed under a procedural due process claim, the plaintiff must first identify the protected property or liberty interest at stake. *Malhotra*, 77 F.4th at 536. Here, Defendants do not contest that Ghayoori had a constitutionally protected interest in his degree.

When a right is protected by the Due Process Clause, a state actor "may not withdraw [it] on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *Doe v. Purdue*, 928 F.3d 652, 663 (7th Cir. 2019). "The hallmarks of due process are notice and an opportunity to be heard." *Pugel v. Bd. of Trustees of University of Illinois*, 378 F.3d 659, 663 (7th Cir. 2004), *citing Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). Moreover, any hearing "must be a real one, not a sham or pretense." *Doe*, 928 F.3d at 663. For example, in *Pugel*, the Seventh Circuit held that a plaintiff failed to state a due process claim where she

received written notice of an inquiry into her research and a hearing was conducted before an Investigation Panel, which decided to discharge her based on those same charges. *Pugel*, 378 F.3d at 663. During the hearing, she was able to present witnesses to the investigatory panel. *Id.* at 666. Although one member of the disciplinary panel was absent during her witness's testimony, the Seventh Circuit found that factor to be inconsequential because three other members of the panel were present, and the plaintiff was able to obtain further review in an appeal to the University's Chancellor. *Id.*

Ghayoori argues that his Due Process rights were violated when Defendants failed to interview witnesses during the investigation into his conduct, destroyed evidence that would have supported Ghayoori's position, and ignored evidence relating to publishing timelines and access to materials. Unlike the plaintiff in *Pugel*, Ghayoori's allegations reveal that he may not have received an opportunity to present witnesses on his own behalf during the disciplinary proceedings. While "due process did not entitle [Plaintiff] to a favorable result based on this testimony," Ghayoori must have had "a meaningful opportunity to present it." *Pugel*, 378 F.3d at 666. Ghayoori's allegations lead to a serious question of whether the University provided him with a meaningful opportunity to be heard. If his allegations are true, then his inability to present evidence in support of his position could have rendered the process deficient. As such, Ghayoori has pled sufficient factual allegations to state a claim that is plausible on its face. Therefore, Defendant's request to dismiss the Section 1983 claim against President Killeen is denied.

### D. Breach of Contract Claim

Defendants next argue Ghayoori's breach of contract claim should be dismissed against President Killeen because there is no evidence that he was a party to the contract. Ghayoori agrees that President Killeen is not liable for the breach of contract claim. Therefore, the Motion to Dismiss is granted as to that issue. Additionally, Defendants argue Ghayoori's claim must be dismissed because he failed to identify any specific contractual promises that were allegedly breached. Finally, Defendants argue that Plaintiff fails to allege arbitrary and capricious conduct, so the University is entitled to judicial deference.

A breach of contract claim requires Ghayoori to allege: "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 858 (7th Cir. 2019). To establish the terms of a contact, the complaint must specify "the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston*, 741 F.3d at 773. In the academic context, the terms are usually set forth in the school's catalogues, bulletins, and student handbooks. *Columbia Coll. Chicago*, 933 F.3d at 858. Only the "specific promise[s]" contained therein constitute the terms of the contract. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

"Illinois courts have expressed a reluctance to interfere with academic affairs and have held that a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith." *Columbia Coll. Chicago*, 933 F.3d at 858. Thus,

a university would not be liable for breach of contract unless it "did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith," or that it disciplined a student "without any rational basis." *Id.*

For example, in *Malhotra*, the Seventh Circuit held that the plaintiff did not sufficiently plead that university officials violated a specific contractual right, despite having several opportunities to amend his complaint. *Malhotra*, 77 F.4th at 537. In that case, the plaintiff did not provide the source of the contact or identify any specific promise by the university or him. *Id.* Instead, Malhotra alleged only that he paid tuition, and argued that the Court should assume that "his act of paying tuition created a return promise from the University to either suspend him only for good cause or to follow its own procedures when deciding whether to suspend him." *Id.* The Seventh Circuit held that it could not make such an assumption. *Id.* In the absence of any evidence of an express or implied contract, Malhotra failed to meet his burden of demonstrating that there was a contract between him and the university. *Id.*

Here, Ghayoori alleges that he and the University "entered into a binding and enforceable contract, which was supported by good and valuable consideration." As part of that contract, Ghayoori "agreed to, and was required to, among other things, make tuition payments; regularly attend classes; submit papers and take examinations; abide by UIUC's rules, regulations, policies, and procedures; comply with directives from the Professors at UIUC; prepare a Dissertation which took hundreds of hours of work; seek input, comment and approval for that Dissertation; revise that Dissertation; and defend that Dissertation." In exchange, the University "was required to award Mr. Ghayoori a

Doctoral degree in the event that he performed all conditions precedent to its award and to allow him to retain that Doctoral degree."

Just like the plaintiff in *Malhotra*, Ghayoori did not meet his burden of demonstrating that there was a contract between him and the University. He did not point to any specific source of the alleged contract or the terms of that purported contract. Without that information, he has not met his burden of demonstrating the existence of a contract and his breach of contract claim must be dismissed.

## IV.   CONCLUSION

For the forgoing reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. The Motion is GRANTED with prejudice as to Ghayoori's Fifth Amendment claim, Section 1983 claim against the Board, and Fourteenth Amendment claim against the Board. The Motion is GRANTED without prejudice as to the breach of contract claim. Ghayoori may file a Third Amended Complaint to cure the deficiencies in his breach of contract claim within 21 days of the entry of this order. The Motion is DENIED as to Ghayoori's Section 1983 claim against President Killeen.

ENTER: July 12, 2024

          /s/ Colleen R. Lawless
          COLLEEN R. LAWLESS
          UNITED STATES DISTRICT JUDGE