IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ARASH GHAYOORI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-cv-2116 |
| ) | |
| TIMOTHY L. KILLEEN and THE ) | |
| BOARD OF TRUSTEES OF THE ) | |
| UNIVERSITY OF ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## OPINION

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is the Motion to Dismiss filed by Defendants University President Timothy Killeen ("Killeen") and the Board of Trustees of the University of Illinois ("the Board"). (Doc. 26). On July 12, 2024, this Court granted, in part[1], Defendants' Motion to Dismiss his Second Amended Complaint and allowed Ghayoori leave to amend his complaint within 21 days of the entry of its order. (Doc. 21). Ghayoori timely filed his Third Amended Complaint, to which Defendants moved to dismiss Count II based on Plaintiff's alleged failure to state a breach of contract claim.

---

[1] The Motion was granted with prejudice as to Ghayoori's Fifth Amendment claim, Section 1983 claim against the Board, and Fourteenth Amendment claim against the Board. The Motion was granted without prejudice as to the breach of contract claim. The Motion was denied as to Ghayoori's Section 1983 claim against President Killeen.

I.  **FACTUAL BACKGROUND**

Prior to awarding students with a doctoral degree, the University of Illinois ("the University") requires its students to meet minimum GPA requirements and registration requirements for their specific degrees. (Doc. 1, Ex. 4 at 26). The University also requires students to pass preliminary examinations and complete a dissertation. (*Id.* at 26-30). When a student is accused of plagiarism, the student is subject to the University's discipline system. (*Id.* at 46).

The Student Code requires that when a student is suspected of plagiarism, a disciplinary officer is appointed to notify the student and investigate the allegations against them. (Doc. 1, Ex. 2 at 5). The student may admit or deny the allegations. (*Id.*). If the student denies the allegations, a disciplinary officer may refer the matter to a subcommittee who holds a hearing with the student present. (*Id.*).

Prior to the subcommittee hearing, the student may submit a list of witnesses, who are subject to the approval of the Committee Chair. (*Id.* at 7). At the hearing, the student can provide a narrative description of the alleged incident and present evidence. (*Id.*). The subcommittee is tasked with determining whether it is more likely true than not true that the student's conduct constitutes a violation of the student code. (*Id.*). If a violation is found, the subcommittee will consider the appropriate sanction, including the revocation of a degree based on "fraud, misrepresentation, or other violation of the University standards in obtaining a degree, or for other serious violations committed by

a student prior to graduation." (*Id.* at 12[2]). The student may appeal the decision to the executive director. (*Id.* at 13).

In Spring 2014, Ghayoori began his graduate studies at the University of Illinois. (Doc. 23 at ¶¶8-9). During his time in the Industrial Systems Engineering program, he maintained appropriate grades, acted as a teaching assistant, published peer-reviewed papers in that field, lectured for undergraduate students, and maintained full-time enrollment. (*Id.* at ¶¶12-14). In May 2019, Ghayoori began working for MTEK Sciences. (*Id.* at ¶18).

In January 2020, Ghayoori passed his preliminary examinations and submitted his dissertation to the Dissertation Committee for review. (*Id.* at ¶¶19-20). After receiving feedback on that dissertation, he incorporated suggestions into his final Doctoral submission, including adding a section regarding HIV incidences in Rwanda. (*Id.* at ¶21). In July 2020, the Doctoral Committee determined Ghayoori's dissertation represented original work and fully satisfied all requirements for a doctoral degree from the University. (*Id.*). The University conferred Ghayoori with his doctoral degree in December 2020. (*Id.* at ¶23).

On May 6, 2021, the University received a complaint accusing Ghayoori of plagiarizing a portion of his dissertation. (*Id.* at ¶29). Ghayoori alleges the original plagiarism complaint was made by a disgruntled former coworker, who convinced

---

[2] Defendants note that the attached exhibit is the 2013 edition of the Student Disciplinary Procedures, and suggest that the 2023 edition of the Student Disciplinary Procedures would be more appropriate based on the date of the disciplinary proceedings. (Doc. 27 at 6, n.3) However, Defendants concede that the "Revocation of Degree" provision is the same in both the 2013 and 2023 version of the Student Disciplinary Procedures. (*Id.*).

another colleague to report Ghayoori's dissertation for plagiarism. (*Id.*). The University began investigating these allegations and found "additional claims of purported plagiarism." (*Id.* at ¶31). Ghayoori was represented by counsel during the process. (*Id.* at ¶41). After the University completed the research misconduct investigation, it revoked Ghayoori's doctoral degree in August 2023. (*Id.* at ¶¶32-33).

Ghayoori argues the University failed to interview several witnesses who would have supported his claim that he did not engage in plagiarism. (*Id.* at ¶41). Additionally, Ghayoori believes he was not able to plagiarize because his dissertation was published before the other work. (*Id.* at ¶46). Finally, Ghayoori asserts the University deleted his protected electronic data from his email account, which would have supported his claim that he did not have access to the other work. (*Id.* at ¶47).

## II. DISCUSSION

### A. Legal Standard

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *See Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true, and construing all reasonable inferences in plaintiff's favor. *Christensen*, 483 F.3d at 458. To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving defendants fair notice of the claims. *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011). However, the complaint must set forth facts that plausibly demonstrate a claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A

plausible claim is one that alleges factual content from which the court can reasonably infer that defendants are liable for the misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Analysis

Defendants argue Ghayoori's Complaint does not identify any specific promises, while Ghayoori argues the disciplinary procedures properly form an enforceable contract. A breach of contract claim requires Ghayoori to allege: "(1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) plaintiff performed his contractual obligations, and (4) resultant damages." *Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 858 (7th Cir. 2019). To establish the terms of a contact, the complaint must specify "the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston*, 741 F.3d at 773. In the academic context, the terms are usually set forth in the school's catalogues, bulletins, and student handbooks. *Columbia Coll. Chicago*, 933 F.3d at 858. Only the "specific promise[s]" contained therein constitute the terms of the contract. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009).

"Illinois courts have expressed a reluctance to interfere with academic affairs and have held that a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith." *Columbia Coll. Chicago*, 933 F.3d at 858. Thus, a university would not be liable for breach of contract unless it "did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith," or that it disciplined a student "without any rational basis." *Id.*

The Court may consider attachments to the Complaint when ruling on a Motion to Dismiss. *Forrest v. Universal Savings Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007). Here, Ghayoori attached to his Third Amended Complaint the offer letter sent by the University; the student disciplinary procedures; the University's Student Code; and the University's Graduate College Handbook of Policy and Requirements for Students. The Student Disciplinary Procedures outlined concrete, specific actions the University would take when investigating a student accused of academic dishonesty. For example, it outlined the particular order that evidence would be presented before a subcommittee, the timeline for giving the accused student notice of the hearing, and the decision-making process. Therefore, the procedures outlined in those sources constitute contractual promises. *See Doe v. Butler University*, 696 F.Supp.3d 520, 528 (S.D. Ind. Sept. 29, 2023) (finding that a contract exists where the University's student handbook identified with specificity its Title IX investigatory procedures).

Ghayoori alleges that "[p]ursuant to that contractual agreement, Defendant was required to award Mr. Ghayoori a Doctoral degree in the event that he performed all conditions precedent to its award and to allow him to retain that Doctoral degree." (Doc. 23 at ¶61). Although the University expressly reserved the right to revoke a student's degree in its Student Disciplinary Procedures, Ghayoori argues that the University acted in bad faith when applying those discretionary standards.

To challenge the University's discretionary decision-making under the policy, Ghayoori is required to plead sufficient facts indicating the University has acted arbitrarily, capriciously, or in bad faith. Ghayoori must show that the decision "lacks any

discernible rational basis" or "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible *did not actually exercise professional judgment.*" *Bosch v. Northshore Univ. Health Sys.*, 2019 IL App (1st) 190070, at ¶34 (emphasis in original) (internal quotations omitted)[3].

In *Bosch*, the Illinois Appellate Court reversed the dismissal of a student's breach of contract claim against his university, where the student alleged that the defendants "wholly invented" the charges against him. *Bosch*, 2019 IL App (1st) 190070, at ¶44. The appellate court noted that these allegations were sufficient to survive a motion to dismiss because the student did not merely allege that defendants were mistaken or that their judgment was poor. *Id.* The appellate court further cautioned dismissal at that stage because the prevailing questions of motive and intent are properly adjudicated by the courts. *Id.* at ¶45.

Here, Ghayoori alleged that the University acted in bad faith by deleting electronic data from his email account and improperly declining to interview several witnesses. As noted in this Court's prior decision, Ghayoori's allegations sufficiently raise the question of whether the University provided him with a meaningful opportunity to be heard. These allegations also sufficiently allege the University acted arbitrarily, capriciously, or in bad faith. Similar to *Bosch*, Ghayoori's allegations do not involve mere mistakes or poor judgment and properly allege a claim for breach of contract against the University.

---

[3] When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). In the absence of a ruling by the Illinois Supreme Court, courts should "defer to interpretations offered by state appellate courts unless there is a 'persuasive indication[ ] that the state supreme court would decide the issue differently.'" *Rodas*, 656 F.3d at 626 (quoting *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004)) (alterations in original).

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 26) is DENIED. Defendants shall respond to the remainder of the Complaint within 14 days of the entry of this Order.

ENTER: December 20, 2024

COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE